UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BERT JOSEPH FIELDS,

        Petitioner,

v.                                 Case No. 8:06-cv-1579-T-17MAP

SECRETARY DEPARTMENT OF CORRECTIONS,

        Respondent.

_____/

## ORDER

This cause is before the Court on pro se Petitioner Bert Joseph Fields' petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Fields challenges his conviction and sentence entered by the Circuit Court for the Sixth Judicial Circuit, Pasco County, Florida. A review of the record demonstrates that, for the following reasons, the petition must be denied.

## PROCEDURAL HISTORY

On December 28, 2000, the State Attorney filed a two-count Felony Information charging Fields with capital sexual battery and lewd or lascivious molestation. (Exh 19: Vol. 1: R 10-11).[1]  The case proceeded to jury trial before the Honorable William Webb, Circuit

_____

[1] Respondent filed the eight-volume record on direct appeal, consisting of seven original volumes
(continued...)

Judge, beginning July 18, 2002. (Exh 19: Vols 3-7). Fields was represented by Assistant Public Defender Michael Tewell. The jury found Fields guilty as charged on both counts. (Exh 19: Vol. 1: R 132-133). On July 26, 2002, the court imposed a life sentence for sexual battery (Exh 19: Vol. 1: R 144-150), and on August 2, 2002, the court imposed a consecutive thirty-year sentence for lewd molestation. (Exh 19: Vol. 1: R 154-160).

Fields pursued a direct appeal. J. L. "Ray" LeGrande, the Special Assistant Public Defender assigned to represent Fields on appeal, filed an initial brief (Exhibit 1) raising one issue:

> THE COURT ERRED IN PERMITTING JURORS TO BE EXPOSED TO "CRIME VICTIM RIGHTS" NOTICES PROMINENTLY POSTED ON COURTROOM DOORS.

The State filed its answer brief. (Exhibit 2). Fields' appellate counsel waived the filing of a reply brief. (Exhibit 3). On July 9, 2003, in Case No. 2D02-3748, the Second District Court of Appeal filed a per curiam unwritten opinion affirming Fields' conviction and sentence. (Exhibit 4). *Fields v. State*, 851 So. 2d 159 (Fla. 2d DCA 2003)[Table]. The mandate issued on July 30, 2003. (Exhibit 5).

On June 7, 2004, Fields filed a pro se state petition for writ of habeas corpus in the district court of appeal alleging ineffective assistance of appellate counsel. (Exhibit 6). Fields contended his appellate attorney was ineffective for failing to raise on direct appeal the issues that: (1) the trial court erred in denying Fields' motion to suppress statements;

---

[1](...continued)
(Vols 1-7) and one supplement (Supp.) as an attachment to as Respondent's Exhibit 19. The pleadings and documents found in Volume 1 are referred to the clerk's number in the bottom right hand corner of the page. The trial transcript, which is contained in Volumes 3 through 7, is referred to as "T," followed by the court reporter's number in the upper right hand corner of the page.

(2) the trial court erred in denying timely made motions for mistrial. On July 8, 2004, Fields

filed an amended petition for writ of habeas corpus. (Exhibit 7).

Pursuant to an order to show cause, the State filed a response to the state petition

for writ of habeas corpus on August 16, 2004, with numerous record exhibits attached.

(Exhibit 8). On November 22, 2004, in Case No. 2D04-2586, the district court of appeal

filed an order denying the original and amended petitions without  discussion. (Exhibit 9).

*Fields v. State*, 895 So. 2d 416 (Fla. 2d DCA 2004)[Table]. Fields filed a motion for

issuance of a written opinion (Exhibit 10), which the appellate court denied on January 12,

2005. (Exhibit 11).

On February 11, 2005, Fields filed a pro se motion for postconviction relief pursuant

to Rule 3.850 of the Florida Rules of Criminal Procedure. (Exhibit 12). He raised the

following three claims: (1) trial counsel was ineffective for failing to properly argue in the

motion to suppress the issue of custodial versus noncustodial statements; (2) trial counsel

was ineffective for failing to object to the state attorney's improper argument during closing,

thus failing to preserve the issue for appellate review; (3) the trial judge showed bias in his

ruling to objections during closing arguments. On September 26, 2005, the court issued a

written order summarily denying all three claims. (Exhibit 13). The court determined that

grounds one and two were without merit under a *Strickland v. Washington* analysis, and

ground three was procedurally barred.

Fields appealed the adverse ruling. He filed an initial brief, pro se, on December 9,

2005. (Exhibit 14). Because of the summary nature of the proceedings, the State did not

file an answer brief. On March 29, 2006, in Case No. 2D05-5152, the Second District Court

of Appeal filed a per curiam opinion affirming the denial of postconviction relief. (Exhibit 15).

*Fields v. State*, 929 So. 2d 1063 (Fla. 2d DCA 2006)[Table]. Fields filed a pro se motion for

issuance of a written opinion (Exhibit 16), which was denied by the appellate court on May

15, 2006. (Exhibit 17). The mandate was issued on May 31, 2006. (Exhibit 18).

The Present Petition

Fields timely signed the § 2254 petition on August 22, 2006. The petition contains

the following four grounds for relief:

Ground One

PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED WHEN PROSPECTIVE JURORS WERE EXPOSED TO IMPROPER NOTICES PRE-TRIAL.

Ground Two

APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE ON DIRECT APPEAL THE ISSUE THAT THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS PETITIONER'S CONFESSION.

Ground Three

APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE ON DIRECT APPEAL THE ISSUE OF PROSECUTORIAL MISCONDUCT.

Ground Four

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO (1) RAISE THE CUSTODIAL VERSUS NON-CUSTODIAL NATURE OF PETITIONER'S CONFESSION; (2) OBJECT TO INSTANCES OF PROSECUTORIAL MISCONDUCT; (3) THE TRIAL JUDGE SHOWED BIAS AGAINST PETITIONER.

STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

Discussion

Ground One

Fields alleges his due process rights were violated when prospective jurors were exposed to improper notices pre-trial. On July 12, 2002, Fields filed a motion in limine

- 5 -

seeking to remove "Crime Victim Rights" posted notices from the courtroom doors.[2] (Exh 19: Vol. 1: R 46-47). On July 15, 2002,  Fields filed an "amended motion for order finding Section 960.0021, Florida Statutes unconstitutional. (Exh 19: Vol. 1: R 57-76). At a hearing to consider pretrial matters, including the foregoing amended motion, the court orally denied the motion without giving reasons therefor.(Exh 19: Vol. 2: R 271-272). The court issued a written order the same day. (Exh 19: Vol. 1: R 78). On direct appeal, Fields argued that the conspicuous posting of victims' rights notices significantly impaired Fields' Florida and federal constitutional rights to an impartial jury. In its answer brief, the State argued that the issue was not preserved for appellate review:

> Jury selection in the instant case addressed numerous times by both the trial court, counsel for the Appellant as well as by the prosecutor the need to find an impartial jury that could make a determination based only on the facts and evidence from the witness stand. (R. 5-174). At no time during voir dire, did counsel for Appellant ask any of the potential jurors if anyone had read the sign outside the courtroom door, nor did counsel ask if anybody thought the victim's rights as listed in the notice (if any of them read it) were superior to the Appellant's right to a fair trial. Therefore, Appellant's entire argument is based on nothing more than speculation.[3]

> 3 Appellee would state that jurors in the instant case were escorted from the jury pool room to the courtroom by the bailiff, and it is unclear whether or not they entered the courtroom from a side door or the entrance from a main hallway. Certainly victims would enter the courtroom through the main door off of the main hallway.

> In *Way v. State*, 774 So. 2d 896 (Fla. 4th DCA 2001) the issue revolved around mid-trial publicity and its effect on the jury. The court found that initially a determination had to be made whether the published material had the potential for prejudice and if it did, an inquiry should be made of the jurors to

_____

[2] In its answer brief, the State pointed out that Fields' amended motion to find §960.0021, Fla. Stat., unconstitutional is included in the record on appeal (Exh 19: Vol. 1: R 57-58) as is a copy of the notice (Exh 19: Vol. 1: R 59). The State asserted that the photographs included in the record and attached to the motion depicting various courtroom doors (Exh 19: Vol. 1: R 50-56) do not indicate a readable presentation of the notices on the courtroom doors, and therefore it was assumed that the notice contained in the appellate record at R 59 was the one that was the subject of the controversy.

determine whether any of them read the material in question. If none of them read the material then its publication could not have prejudiced the defendant; if the jurors indicated they had read the material, then they should be questioned to determine the effect of the publicity.

Based on the analysis employed in *Way v. State*, *supra*, albeit within the realm of publicity, it is clear, that the issue presented herein has not been preserved for this Court's review.

Section 960.0021, Fla. Stat. does require a trial court to advise those individuals in the courtroom either at arraignment, sentencing, or at a pre-trial conference the rights of victims in the event that anyone present is a victim. An alternative within the statute is that a copy of the victim's rights be posted outside the courtroom doors. Appellant initially argues that "no reasonable prospective juror will be able to ignore the implied statement which is that the rights of alleged victims are to be given more weight here in this courtroom than the rights of the defendant." (R. 57-58). On that basis, Appellee asserts that Appellant is challenging the statute as applied. An attack on the constitutionality of a statute as applied requires preservation. Since no inquiry was made as to whether or not the potential jurors even saw the notice, there has been no preservation and therefore he has established no prejudice. Certainly the statute is not unconstitutional on its face because the notice itself subordinates the victim's rights 'to the extent that they don't interfere with the constitutional rights of the accused.' By way of comparison, in *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720, reh. den. (1991), the court said a jury can be told directly of the impact a murder had on the family and friends of the victim in considering whether to recommend death. Certainly a notice on the door of a courtroom advising victims of the right to notice and of compensation, as well as their right to be present as long as it doesn't interfere with the defendant's rights, clearly indicates the superior rights of the accused and cannot, under any test of scrutiny be deemed facially unconstitutional. Further, upon the analysis employed by the Appellant herein since all citizens are presumed to know the content of Florida statutes, the mere knowledge of the existence of this provision would prevent any defendant from receiving a fair trial in the state of Florida.

(Exh 2: Brief of Appellee at pages 3-5). The state appellate court affirmed the denial of

Fields' Amended Motion for Order Finding Section 960.0021, Florida Statutes

Unconstitutional.

Ground one is procedurally barred because of Fields' failure to properly preserve the issue in the trial court. This claim can be denied on independent and adequate state procedural grounds. A federal court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. This rule applies whether the state law ground is substantive or procedural. *See Eagle v. Linahan*, 279 F.3d 926, 936 (11th Cir. 2001).

Alternatively, even if the issue could be considered properly presented to the state courts for a ruling on the merits, Fields fails to make out a threshold showing of entitlement to relief under 28 U.S.C. §§ 2254(d) and (e). To this Court's knowledge, after research, there is no United States Supreme Court decision addressing whether a criminal defendant's due process rights are affected by the presence of written notices explaining the rights of victims posted on courthouse doors. Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law. *Mitchell v. Esparza*, 540 U.S. 12 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308-1310 (11th Cir. 2003).

Ground one does not warrant relief.

### Ground Two

Fields claims his appellate counsel was ineffective for failing to raise on direct appeal the issue that the trial court erred in denying the motion to suppress Fields' confession.

After a full and fair evidentiary hearing on the motion to suppress,[3] the trial court made the

following oral findings of fact and conclusions of law:

> THE COURT: Thank you. I do make the following findings of fact. I'd ask the court reporter to mark this or tab it, because I'm going to ask that it be transcribed to be utilized for a proposed order.
>
> I find that on the date of the defendant's statement that the subject matter of the motion to suppress December 1st, 2000, that he was initially interviewed at his home by Detective Mazza and Davis, after being invited in by the defendant.
>
> That the defendant was asked to come down to the sheriff's office for further discussion and he agreed. And he conveyed himself per his statement to the Pasco County Sheriff's Office, not arriving immediately after the officers left his home, but upwards of almost an hour later.
>
> I find that further that during this initial conversation at the defendant's home that both detectives' tone was calm and civil, no threats of promises was made by either officer to the defendant. Upon the defendant arriving at the sheriff's office, he was directed to the interview room, which appears on State's Exhibit Number 1 of the videotape, and that the videotape begins with the defendant seated by himself in the interview room.
>
> I find that he was sitting in a chair next to a table casually with his legs crossed. I find he doesn't appear to be nervous, even though as the officers come in he says he's nervous. The defendant stated that he was scared. The defendant's appearance both in terms of body language and all other indicators are directly contrary, he doesn't appear scared at all.
>
> His tone of voice doesn't reflect that he's scared. The defendant stated -- I find the defendant stated he was emotional. The defendant's tone of voice, manner of speaking suggests that he was cool, calm and collected at all times. He stated that he had mental problems and then conceded that it was many years earlier when he was up undergoing basic training for the 101st Airborne Division. That he took no medication for any mental illness and that the mental illness was only related to basic training. That he remained in the army, was not discharged for any reason and that he had the privilege of being assigned to foreign posts.

---

[3] The suppression hearing transcript is located in the Supplemental Volume at R 295-339.

I find the defendant was offered beverages and he accepted coffee from the officers. I find that it wasn't a bribe, it was simply a courtesy on the part of the officers. I find he interpreted it as such. The defendant remains seated in his chair in a relaxed manner per the videotape State's Number 1.

I find that later in the interview the defendant made the statement that he was totally confused. I find that is not supported by his statements before and after in that he exhibited no signs of confusion, neither through his physical appearance, nor by his statements in that even as he stated he was confused, he continued to deny committing any crime.

Moreover, the defendant well understood that he was being questioned concerning a significant crime. At one point in time the defendant states that he understands that he could -- he'll get in trouble for this -- strike that. I do not make that last finding.

I find that although the defendant stated at hearing on the motion to suppress that he felt he didn't have the right to leave the interview room, this is contradicted by his actions as they appear on videotape and is simply a self serving statement on the defendant's part.

At one point, several points in time during the interview the defendant even expressed some concern about what happens on television, police programs, about being incarcerated or placed in a cage, and both officers reassured him that was not going to happen, they were simply interviewing him, and that what happens on television is not reality.

I find that although the defendant protested at hearing that he was claustrophobic when he was giving the statement, that he made no mention that he was claustrophobic throughout the approximately hour and a half interview, only stated he was claustrophobic when he was advised at the end that he was going to be arrested and placed in a jail cell.

When the defendant was confronted that it didn't appear on videotape, and he stated that it might have happened before the tape started, I do not find credible. The defendant conceded that he saw that the detectives left the interview room by simply turning the handle, not unlocking anything.

I find the defendant conceded at hearing that no one told him that he was not free to leave. I find that the defendant stated at hearing and believed and understood that he was never beaten, threatened, that the officers never threatened him with their weapons, that they didn't even touch their weapons.

I find that throughout the defendant's interview at no time did either detective physically threaten the defendant by body language or proximity or in any other way. I find the defendant conceded that at various times during the interview only one officer was present, the other officer going to get coffee, blowing his nose, having a cold and other innocuous actions by the detective.

I find that the defendant conceded that neither detective yelled at him. The defendant stated that he felt the detectives were blocking the door, but I find that's not credible, it's contrary to what the individual shows.

I further find that at one point in time Detective Davis actually offered to switch seats with the defendant, the defendant declined it, both spoke in a jovial tone of voice, both Detective Davis and the defendant.

I find that the defendant's initial statements at the Pasco County Sheriff's Office was noncustodial. It was only after a clear and inculpatory statement on the defendant's part that he was advised of his rights under *Miranda versus Arizona*, and that the officers acted properly in advising the defendant of his rights under *Miranda* at that time.

I find that any statements made thereafter, as well as the statements made prior to the advising the defendant of *Miranda*, were freely and voluntarily given to Detectives Mazza and Davis.

. . .

I'm familiar with the cases cited by counsel, and I'm familiar with other cases in this area. The defendant has no constitutional entitlement to questioning by law enforcement to be clumsy, faltering or without structure.

Law enforcement is not required to assume some type of keystone cop attitude for noncustodial questioning to be nonthreatening. The fact that the officer's statements -- strike that. That the officers questioning of the defendant was thoughtful, logical and purposeful does not make the interview involuntary. It makes it a professional interview. I find in conclusion that the defendant's statement was freely and voluntarily given to  Detectives Mazza and Davis, and the defendant's motion to suppress is denied.

(Exh 19: Supplemental Volume at R 330-336). The trial court memorialized the detailed

oral findings in a written order denying the motion to suppress. (Exh 19: Vol. 1: R 97-99).

The court held that Fields' statements were given freely and voluntarily, and there was no

violation of *Miranda* because Fields was not subjected to custodial interrogation during the initial part of his interview with police. This conclusion was based on the court's observation of the videotape, the testimony of the witnesses, and the court's explicit credibility determinations. In *Thompson v. Keohane*, 516 U.S. 99 (1995), the Supreme Court offered the following description of the *Miranda* custody test:

> Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

516 U.S. at 112 (internal quotation marks omitted) (quoted in *Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004). In this case, the state court's denial of the motion to suppress was not contrary to, nor an unreasonable application of, *Miranda* and its progeny because there was neither a formal arrest nor a restraint on Fields' freedom of movement of the degree associated with a formal arrest. Consequently, ground two does not warrant habeas corpus relief.

## GROUND THREE

Fields complains his appellate counsel was ineffective for failing to raise on direct appeal the issue of prosecutorial misconduct. Specifically, he refers to two instances; one regarding the prosecutor stating his personal opinion, and another in which the prosecutor remarked that Fields would not have been charged if he were not guilty. As to the first comment, the prosecutor stated as follows:

> MR. STATHOPOULOS [Assistant State Attorney]: Counsel is also going to talk about the kids. I'm confident he'll talk about the kids. Now, is it fair to

ask these kids, these two kids to testify the same as any other kids? Because these kids are the victims of sexual abuse. If you believe what they've told you, they're victims of sexual abuse. And children this age who have been victimized, one, by the very person who should be protecting her, will not testify as a normal –

MR. TEWELL [Defense Counsel]: Objection. Not in evidence. May we approach for a motion?

THE COURT: You may.

BENCH CONFERENCE

MR. TEWELL: That's a personal opinion. We move for a mistrial. We also move for mistrial on we were given various ground rules. I made objection to enforce the ground rules.

THE COURT: Keep your voice down.

MR. TEWELL: I made an objection to enforce the ground rules as I interpreted the ground rules to be violated. These objections were denied. We move for a separate mistrial as to those.

THE COURT: Denied. But as to the objection as to the last portion of the state's closing. I'm going to sustain the objection. You're attempting to – first of all, you're not phrasing it in a manner other than giving your personal opinion. And second of all, you're making it an argument that is not predicated upon common sense. It's predicated upon some kind of expert testimony. So I'm sustaining the objection and I'll instruct the jury to disregard the last statement.

MR. TEWELL: I moved for mistrial as to that, too?

THE COURT: Right. I knew you did. I denied as to both.

MR. TEWELL: Okay.

END OF BENCH CONFERENCE

THE COURT: Ladies and gentlemen of the jury, you're instructed to disregard the last statement of counsel. You may proceed.

(Exh 19: Vol. 7: T 853-855). The second remark by the prosecutor which is the subject of

ground three came about as follows:

> MR. STATHOPOULOS: Now, let's talk about 2 through 8 [lesser included offenses]. Number 2 is attempted sexual battery.

> Okay. These are lesser included offenses. In other words, as they go down, they become less egregious. Okay.

> Attempted sexual battery means just that, that he tried to do it but he didn't do it. Well, folks, if the defendant didn't put his finger in her vagina, he wouldn't be charged with sexual battery. he did put his finger in her vagina --

> MR. TEWELL: Objection. Statement of opinion.

> MR. STATHOPOULOS: I'll rephrase it.

> THE COURT: You may.

> MR. TEWELL: May we approach for a legal motion?

> THE COURT: You may.

BENCH CONFERENCE

> MR. TEWELL: By saying he wouldn't have been charged with it if he hasn't done it is a statement of preponderance. We'd move for mistrial.

> THE COURT: The objection is overruled but I don't want either counsel to give their personal opinion. The very first words out of defense counsel's mouth in your portion of the closing expressed a personal opinion. I don't want either attorney to give their personal opinion. You can say the evidence shows. You can say, I submit. You can do it a variety of ways. But I don't want either one of you talking about your personal opinions. I don't  care what your personal opinions are. It's not ethical to submit what your personal opinions are. Keep them to yourself. Let's proceed.

> MR. STATHOPOULOS: Yes, sir.

END OF BENCH CONFERENCE

> THE COURT: Ladies and gentlemen of the jury, you're instructed to disregard the last statement of counsel. You may proceed.

(Exh 19: Vol. 7: T 864-865).

In Florida, control of comments is within the trial court's discretion; an appellate court will not interfere unless an abuse of such discretion is shown. *E.g., Paramore v. State*, 229 So.2d 855 (Fla.), *modified*, 408 U.S. 935 (1972). Pursuant to state law, a determination as to whether substantial justice warrants the granting of a mistrial is within the sound discretion of the trial court. *Sireci v. State*, 587 So.2d 450 (Fla.), *cert. denied*, 503 U.S. 946 (1992). A mistrial is appropriate only when the error committed is so prejudicial as to vitiate the entire trial. *King v. State*, 623 So.2d 486 (Fla. 1993). In this case, the court gave curative instructions for both comments objected-to by defense counsel, and the remarks, even if improper, were clearly not so egregious as to vitiate the entire trial. *See Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)(were the comments so egregious as to render the trial fundamentally unfair). Fields' appellate counsel would not have been successful in pursuing this issue on direct appeal.

One of appellate counsel's responsibilities is to "winnow out" weaker arguments on appeal and to focus upon those most likely to prevail. *Provenzano v. Dugger*, 561 So.2d 541, 549 (Fla. 1990)(citing *Smith v. Murray* (1986)).The process of winnowing out weaker claims on appeal and focusing on those more likely to prevail is the hallmark of effective appellate advocacy. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983). It is well established that counsel need not raise every nonfrivolous issue revealed by the record. Id. In this case, Fields has not, and cannot, show that appellate counsel's performance was deficient or that he suffered any prejudice under the particular circumstances of Fields' case. Accordingly, the appellate court's denial of Fields' ineffective assistance of appellate

counsel claim is objectively reasonable and can not be considered contrary to, or an unreasonable application of, the *Strickland* standard.

Ground three does not warrant habeas corpus relief.

Ground Four

Fields alleges that trial counsel was ineffective for: (1) failing to raise the custodial versus non-custodial nature of Fields' confession and set it in its proper light in the pre-trial motion to suppress, thus failing to preserve this issue for appellate review; and (2) failing to object to instances of prosecutorial misconduct. Also, Fields asserts the trial court exhibited bias. All three grounds were raised in the rule 3.850 motion for postconviction relief. The trial court found the ineffective assistance of counsel claims to be without merit for the following reasons:

**GROUND ONE**

Defendant alleges trial counsel was ineffective for failing to properly argue in the motion to suppress the issue of custodial versus noncustodial statements. The Defendant states trial counsel should have made the specific arguments that the questioning was systematic, exhaustive, and managed with psychological skill, that the atmosphere was such that a reasonable person would not have felt as if he had a choice to leave or continue speaking with officers, and that the Miranda warning was withheld to obscure both the practical and legal significance of the admonition when it was finally given. The Court addressed these issues and ruled that Defendant's initial statements were noncustodial and freely and voluntarily made. *See Exhibit D: Order*. Specifically, the Court stated to trial counsel in its ruling that "law enforcement is not required to assume some type of keystone cop attitude for noncustodial questioning to be nonthreatening" and "that the officers questioning of the Defendant's was thoughtful, logical and purposeful does not make the interview involuntary." *See Exhibit E: Transcript, page 8, lines 19-25*. Any claim of ineffective assistance of counsel requires the Defendant to prove first that counsel's performance was deficient, and second, that the deficiency prejudiced the defense. *Strickland v. Washington*, 104 S.Ct. 2052 (1984). In the event the Defendant fails to satisfy one component, the inquiry ends, and the reviewing court need not determine if the defendant satisfied the other.

- 16 -

*Maxwell v. Wainwright*, 490 So. 2d 927 (Fla. 1986). In the instant matter the issues the Defendant claims counsel should have argued were presented by counsel and ruled upon by the Court. Trial counsel's failure to prevail on a motion to suppress does not constitute ineffective assistance. *Teffeteller v. Dugger, 734 So.2d 1009 (Fla. 1999).* This claim is denied.

### GROUND TWO

Defendant claims trial counsel was ineffective for failing to object to the state attorney's improper argument during closing, thus failing to preserve the issue for appellate review. Defendant alleges trial counsel was ineffective for failing to object and move for a mistrial after the state attorney improperly made the comment during closing argument that if the Defendant had not committed sexual battery he would not have been charged with it. Although the Defendant is correct in his claim that the state attorney made this comment, he is incorrect in his statement that trial counsel did not object. Trial counsel objected and made a motion for a mistrial, which was denied by the Court. *See Exhibit F: Trial transcript, page 864, lines 17-25, and page 865, lines 1-20.* This claim is denied.

### GROUND THREE

Defendant claims the Trial Judge showed bias in his ruling to objections during closing arguments. In support of his claim the Defendant alleges that the Judge overruled all of the defenses objections and sustained many of the state's objections. Issues regarding Trial Court error and judicial bias should have been raised on direct appeal and are not cognizable in a 3.850 motion for post conviction relief. *See Bruno v. State, 807 So.2d 55 (Fla. 2001); Harvey v. Dugger, 656 So.2d 1253 (Fla. 1995).* This claim is denied.

(Exh 13: Order Denying Defendant's Motion for Postconviction Relief at pp. 1-3).

The third contention in ground four regarding the alleged bias of the trial judge, was correctly held to be procedurally barred under state law; therefore this Court is precluded from reviewing the claim. Because Fields could have, if at all, preserved and raised a federal constitutional claim regarding judicial bias on direct appeal, he was barred from doing so collaterally in a rule 3.850 motion. This Circuit has long recognized this aspect of Florida law. *See Sullivan v. Wainwright*, 695 F.2d 1306, 1310 (11th Cir.)(claims that could

- 17 -

have been or should have been preserved at trial and then raised on direct appeal and were not are procedurally barred), *cert. denied*, 464 U.S. 922 (1983); *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir.), *cert. denied*, 111 S.Ct. 96 (1990)(under Florida law, an issue which could have been raised on direct appeal may not be reviewed in a Rule 3.850 motion).

Finally, the state postconviction court's rejection of the first two allegations of ineffective assistance of trial counsel is objectively reasonable under the *Strickland* two-prong test because Fields cannot establish deficient performance or prejudice.[4] Thus, under the AEDPA's deferential standard of review, ground four does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Fields' petition for writ of habeas corpus is denied.  The Clerk is directed to enter judgment against Fields and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at §

---

[4] To the extent Fields is adding new allegations or additional factual support for his ineffective assistance of counsel claims which were not presented to the state court, such allegations are unexhausted and procedurally barred. *See Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992) (new allegations of ineffective assistance of counsel which were not presented to the state court are procedurally barred); *Jackson v. Herring*, 42 F.3d 1350, 1355 (11th Cir.), *reh. denied*, 51 F.3d 1052 (11th Cir. 1995).

2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on April 15, 2008.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Bert Joseph Fields